UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

```
DANIEL D. WHITNEY,                         )
        Plaintiff,                         )
                                           )
    vs.                                    )     1:07-cv-1026-SEB-WTL
                                           )
BIG DOG HOLDINGS, INC. and BIG DOG         )
USA, INC. d/b/a BIG DOG                    )
SPORTSWEAR,                                )
        Defendants.                        )
_____)
                                           )
BIG DOG USA, INC. d/b/a BIG DOG            )
SPORTSWEAR,                                )
        Defendant, Counterclaim-Plaintiff, )
                                           )
    vs.                                    )
                                           )
DANIEL D. WHITNEY,                         )
        Plaintiff, Counterclaim-Defendant  )
```

**ORDER DENYING DEFENDANT/COUNTERCLAIM-PLAINTIFF'S MOTION
TO TRANSFER VENUE**

This cause is before the court on Defendant and Counterclaim-Plaintiff Big Dog USA, Inc. d/b/a Big Dog Sportswear's ("Big Dog Sportswear") Motion to Transfer Venue [Docket No. 22] filed September 18, 2007, pursuant to 28 U.S.C. § 1404(a).[1] Big Dog Sportswear admits that venue is proper in the Southern District of Indiana, but requests that this Court transfer this action to the U.S. District Court for the Central District of California for the convenience of the parties, the witnesses, and in the interest of justice.

---

[1] This Motion was filed solely by Defendant Big Dog Sportswear.

Plaintiff Daniel Whitney argues that Big Dog Sportswear has failed to meet its burden to establish the need for transfer and claims that transferring this action would only shift any inconvenience from Big Dog Sportswear to Mr. Whitney and his third party witnesses. For the reasons detailed in this entry, we DENY Defendant's Motion to Transfer Venue.

**Factual Background**

Mr. Whitney is a comedian and entertainer who has performed in concert tours, DVDs, comedy albums, television series, and feature films. Am. Compl. ¶ 12. He resides in Oklahoma and is more commonly known as LARRY THE CABLE GUY®. Id. ¶ 3, ¶ 12. Mr. Whitney claims he has made a name for himself, both in the entertainment industry and with consumers, in large part due to his use of his signature phrase, "GIT-R-DONE!®" Id. ¶ 12. Mr. Whitney alleges that he is the exclusive owner of multiple federally registered trademarks, including registrations for the word mark GIT-R-DONE®. Id. ¶ 13. Promotional merchandise, including apparel, bearing the GIT-R-DONE® trademark is sold and licensed by Mr. Whitney in various locations, including Indiana, and Mr. Whitney claims that he and his staff have invested significant time and money in advertising the GIT-R-DONE® trademark in Indiana and throughout the world. Id. ¶ 15, ¶ 17.

Mr. Whitney contends that Big Dog Sportswear is an Indiana corporation (Am. Compl. ¶ 5), but Big Dog Sportswear claims it is a California corporation with its principal place of business in Santa Barbara, California. Ans. at 18, ¶ 5. However, we

need not be sidetracked by this minor dispute, since it is undisputed that Big Dog Sportswear operates three outlet stores in Indiana, one of which is located within the Southern District.  Feshbach Decl. ¶ 6.  Big Dog Sportswear manufactures and retails clothing and other items with graphic logos that "often feature not only its 'BIG DOG' or 'BIG DOGS' trademarks but also its famous dog character known as 'BIG DOG' and a variety of humorous expressions and 'attitude phrases,'" including such slogans as "Lead, Follow or Get Out of The Way," "Attitude to Burn," and "Get 'er Done."  Ans. at 18, ¶ 5.  Big Dog Sportswear's Chief Executive Officer, Andrew Feshbach, reports that these products are distributed exclusively by Big Dog Sportswear through its catalog, its website, and a nationwide chain of Big Dog Sportswear retail stores.  Feshbach Decl. ¶ 5.  Big Dog Sportswear claims that it has manufactured, distributed, and sold designs with variations of the expression "Get 'er Done," including, for example, "Get 'er Done . . . Tomorrow" since June 2005.  Ans. at 19, ¶ 8.

In order to protect his various trademarks, Mr. Whitney, through his management company Parallel Entertainment ("Parallel"), hired Continental Incorporated, Inc. d/b/a Continental Enterprises ("Continental") to police the use of his trademarks.  Manders Decl. ¶ 6.  Continental is incorporated in Indiana and is an investigative and consulting company that focuses on intellectual property.  Id. ¶¶ 4-5.  It has opened cases on behalf of Mr. Whitney and Parallel and all the work completed for them by Continental, including investigations Continental conducted, has taken place at Continental's Indiana offices.  Id. ¶¶ 7-8.

3

Continental discovered in November 2006 that Big Dog Sportswear was selling clothing items which appeared to infringe upon Mr. Whitney's intellectual property rights. Mayes Decl. ¶ 4. Those items were manufactured, distributed, advertised, and sold bearing the phrases "GIT 'ER DONE" and "GET 'ER DONE." Am. Compl. ¶ 21. Neither Mr. Whitney nor anyone acting on his behalf has given Big Dog Sportswear permission to produce any item bearing his mark, GIT-R-DONE®. Id. ¶ 22. Continental alerted Parallel of Big Dog Sportswear's items and Parallel authorized Continental to conduct a full investigation. Mayes Decl. ¶ 5. In the process of investigating, Continental made an effort to gather evidence of Big Dog Sportswear's allegedly infringing activities, including purchasing one of the items and processing it into Continental's evidence control system and communicating with representatives of Big Dog Sportswear regarding the manufacture and sale of the allegedly infringing items. Id. ¶¶ 5-6. This investigation was performed by employees of Continental in Indiana. Manders Decl. ¶ 9. Settlement attempts thus far have been unsuccessful. Seymour Decl. ¶¶ 5-6.

## Legal Analysis

### I.  Standard of Review

The purpose of § 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain

4

Co. v. Barge F.B.L.-585, 364 U.S. 19, 26, 27 (1960)).  It provides that "for the convenience of parties and witnesses and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Thus, "transfer is appropriate under § 1404(a) where the moving party establishes that (1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice." State Farm Mutual Auto. Ins. Co. v. Estate of Bussell, 939 F. Supp. 646, 651 (S.D. Ind. 1996) (Barker, J.).  The trial judge has wide discretion to weigh the factors for and against transfer when making this determination.  Id.

**II.   Discussion**

The parties agree that venue is proper for adjudication of this action in either Indiana or California, so the only issue now before us is whether a transfer of venue would be convenient and in the interest of justice under § 1404(a).  Under the Seventh Circuit's well-established guidelines, Big Dog Sportswear has the burden to prove that the Central District of California is not just more convenient, but "*clearly* more convenient" than the Southern District of Indiana.  Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir. 1986) (emphasis added).  As mentioned above, when making this determination, we consider the convenience of the parties, the convenience of the witnesses, and the interest of justice in light of all the circumstances of the case.

### A. Convenience of the Parties

Big Dog Sportswear and its parent corporation, Big Dog Holdings, Inc., are located in Santa Barbara, California. Both of Big Dog Sportswear's witnesses with knowledge regarding the company's allegedly infringing designs, advertising, and sales reside within the Central District of California and are also high-ranking officers of the corporation. Def.'s Br. at 6-7. Big Dog Sportswear has a small executive staff and claims that "[t]o require these key witnesses to travel to Indiana for trial would significantly disrupt the operations of Sportswear." Id. at 7. In addition, the documents pertaining to the design, manufacture, and advertising of the products at issue are housed at Big Dog Sportswear's headquarters in California. Id. Big Dog Sportswear also argues that not only are Mr. Whitney's management company and his booking agent located in Los Angeles, California, Mr. Whitney, as an entertainer, also does substantial business in Los Angeles, which is in the Central District of California. Id. at 6. Thus, Big Dog Sportswear argues that the transfer would be more convenient for both parties and contends, in any event, that the only reason this litigation was filed in Indiana is that Mr. Whitney's counsel resides here. Id. at 5.

Mr. Whitney rejoins that neither his management company nor his booking agent has information essential to this action, so their location is irrelevant. Pl.'s Resp. at 7. Additionally, Mr. Whitney states that he chose Continental, which is based in Indiana, to assist in enforcing his trademarks and, consequently, most of the documentation pertinent to this action originated in and is currently located in Indiana. Id. Therefore, because he

travels constantly, Mr. Whitney argues that the location most convenient for him to litigate this action is Indiana, where his witnesses and evidence are located. Id.

The Southern District of Indiana is obviously less convenient for Big Dog Sportswear than the Central District of California would be. However, "the effect of a transfer cannot be a mere shift of inconveniences among parties." Moore v. AT&T Latin Am. Corp., 177 F. Supp. 2d 785, 789 (N.D. Ill. 2001); accord, Aearo Co. v. Bacou-Dalloz USA Safety, Inc., 2004 WL 1629566, at *1 (S.D. Ind. July 21, 2004) (Hamilton, J.); Educational Visions, Inc. v. Time Trend, Inc., 2003 WL 1921811, at *7 (S.D. Ind. Apr. 17, 2003) (Hamilton, J.). Transferring this case to the Central District of California would only shift the inconvenience from Big Dog Sportswear to Mr. Whitney.

Big Dog Sportswear argues that, because this action rests in large part on trademark infringement and related claims, much of the evidence is likely to come from an examination of Big Dog Sportswear's advertising and marketing methods, information that is often contained in a corporation's files and business records. Consequently, "[i]t is . . . not unusual that venue will be transferred to the district where defendant has its principal office, and where it transacts most of its business." Indianapolis Motor Speedway, Corp. v. Polaris Industries, Inc., 2000 WL 777874, at *5 (S.D. Ind. June 15, 2000) (Barker, J.) (quoting Holiday Rambler, Corp. v. Arlington Park Dodge, Inc., 2004 U.S.P.Q. 750, 752 (N.D. Ill. 1979)).

Big Dog Sportswear maintains that this action should be transferred because the contested issues in this case will center around the evidence and witnesses in California

rather than the evidence and witnesses in Indiana and thus overall convenience would be maximized by transferring the action. Big Dog Sportswear admits that it sells merchandise with variations of the phrase "Get 'er Done" on its Big Dog website as well as in outlets located in Indiana, which are the principal facts it believes Mr. Whitney's witnesses in Indiana will establish. It claims the contested issues in this lawsuit will concern Mr. Whitney's use of the GIT-R-DONE® word mark (information which Big Dog Sportswear claims will likely come from Mr. Whitney, who resides in Oklahoma, or from his management company, which is located in California) and the creation, advertising, and marketing of Big Dog Sportswear's products, all of which will come from California. At this point in the litigation, it is impossible to determine with certainty every issue that will actually be contested, including what the specifics of witnesses' testimony will be. Additionally, while it is true that the site of the allegedly infringing activity is entitled to some consideration in our analysis, it is not the only factor. Otherwise, the defendant would "almost always be allowed to transfer the case to its home forum." Aearo Co., 2004 WL 1629566, at * 2 (quoting Lucent Techs., Inc. v. Aspect Telecomms. Corp., 1997 WL 476356, *3 (E.D. Pa. Aug. 20, 1997)).

  Another important factor in this determination is the plaintiff's choice of forum. It is a longstanding principle that the plaintiff's choice of forum is entitled to "[a] large measure of deference." Chicago, R.I. & P.R. Co. v. Igoe, 220 F.2d 299, 304 (7th Cir. 1955). In fact, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." In re National Presto Industries, Inc., 347

F.3d 662, 664 (7th Cir. 2003) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).  However, this factor carries much less weight for the plaintiff when the forum selected by the plaintiff is *neither* the plaintiff's home forum *nor* the location that bears a substantial relationship to the cause of action.  E.g., Volkswagen Aktiengesellschaft v. West Coast Metric, Inc., 2004 WL 392942, at *3 (S.D. Ind. Feb. 12, 2004) (Hamilton, J.); see also General Instrument Corp. v. Mostek Corp., 417 F. Supp. 821, 823 (D. Del. 1976) ("Where the forum selected by the plaintiff is connected neither with the plaintiff nor with the subject matter of the lawsuit, meeting the burden of showing sufficient inconvenience to tip the 'balance' of convenience 'strongly in favor of the defendant' will ordinarily be less difficult."), cited in State Farm, 939 F. Supp. at 651.

      As we have previously noted, Mr. Whitney does not reside in Indiana, where he filed this suit.  Additionally, the creation, design, and marketing of the allegedly infringing merchandise all occurred at Big Dog Sportswear's principal place of business in California.  However, Big Dog Sportswear sells products through its website to Indiana residents and also operates three outlet stores in Indiana that sell the merchandise at issue, one of which location is within this district.  Moreover, the investigation that led to the filing of this lawsuit was conducted wholly in Indiana, including Continental's purchase of the allegedly infringing merchandise.  Thus, this cause of action has a substantial and direct connection to this forum.  Judge Hamilton, in ruling in a factually analogous case, found "no substantial reason to disregard plaintiffs' choice of the forum where the claims

arose." West Coast Metric, Inc., 2004 WL 392942, at *3.[2]  Although Mr. Whitney does not reside in Indiana nor is this place the location where Big Dog Sportswear designed and manufactured the allegedly infringing merchandise, the events giving rise to the instant allegations (the discovery, sale, and purchase of the items) all took place in Indiana.  Therefore, we shall afford Mr. Whitney's choice of forum the amount of deference it is entitled to receive.

Additionally, Big Dog Sportswear, like the defendant in West Coast Metric, has chosen to sell its products nationally; thus, we do not regard it as unfair to expect Big Dog Sportswear to respond to litigation where it sells its products.  Taking all of these factors into consideration, the convenience of the parties does not support a transfer to the Central District of California.

### B.     Convenience of the Witnesses

The convenience of the witnesses is also an important part of this analysis, perhaps the most important factor, in deciding whether to transfer venue.  Volkswagen Aktiengesellschaft v. Dee Engineering, Inc., 2003 WL 1089515, *3 (S.D. Ind. Mar. 4, 2003) (McKinney, C.J.) (internal citations omitted).  Here, the parties' submissions fail to establish that the convenience of the witnesses for one side should trump the convenience

---

[2] In West Coast Metric, Continental Enterprises was involved in a similar fashion as it is in this case.  Continental investigated alleged trademark infringement in Indiana on behalf of Volkswagen Aktiengessellschaft, a German corporation.  See 2004 WL 392942.

of witnesses for the other. Big Dog Sportswear contends that Mr. Feshbach, CEO of Big Dog Sportswear, and David Wolf, Senior Vice-President of Marketing for Big Dog Sportswear, are the two witnesses "most knowledgeable regarding the creation, design and marketing of the Sportswear merchandise at issue," both of whom reside in the Central District of California. Def.'s Br. at 5-6. Mr. Whitney counters that all of his witnesses (other than himself) work for Continental and reside in Indiana. Both parties contend that all of the documents in their possession that pertain to this suit are located in their respective venues. However, neither party claims that, if necessary, it would be absolutely unable to transport the documents to either location, if necessary for trial.

Here, Big Dog Sportswear's two key witnesses are both employees of the corporation. All of the non-party witnesses from Continental who have been identified by Mr. Whitney are intimately affiliated with him, as they have entered a business relationship to help protect Mr. Whitney's intellectual property rights.[3] Our court has previously recognized that it can "ordinarily [be] assume[d] that the parties will be sufficiently motivated to have their own employees or other allies appear for trial wherever it might take place." Aero Co., 2004 WL 1629566, at *3 (citing West Coast Metric, 2004 WL 392942, at *2; FUL Inc. V. Unified Sch. Dist. No. 204, 839 F. Supp.

---

[3] Big Dog Sportswear contends that the only reason this litigation was brought in Indiana is because Darlene Seymour, General Counsel for Continental and Mr. Whitney's attorney of record, resides here. While that may have been *a* reason, we have found other compelling reasons that this action may have been filed in Indiana; at least there are compelling reasons to allow it to remain here. In any event, we have not relied upon the convenience of counsel in determining whether to transfer this case, as convenience of counsel is not a proper consideration in the transfer analysis.

1307, 1311 (N.D. Ill. 1993)). Neither party has brought any facts to our attention that would make us believe it would be otherwise in this case. Nor has either party identified any other significant non-party witnesses who may not be amenable to service in Indiana or California. Consequently, the convenience of the witnesses factor is largely a "wash" between the parties and thus, does not provide support for a transfer to the Central District of California.

### C.     Interests of Justice

Transferring this action would not further "such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989) (citing Coffey, 796 F.2d at 221). In this case, there is no related litigation, so we focus on the relative speed with which each district disposes of the cases filed on its respective dockets and the law applicable to the claims at issue.

Mr. Whitney has provided data from the Judicial Caseload Profile Report of the U.S. Courts comparing the time to disposition in these two districts. In the year ending September 30, 2006, the median time to trial in a civil case in this district was 26.0 months; in the Central District of California, it was 21.3 months. Exs. E-F. During that same year, the median time from filing to disposition of a civil case was 10.9 months in this district compared to 7.2 months in the Central District of California. Id. We find that these differences are not significant in terms of favoring one forum over the other,

especially since a transfer of the case has the potential to cause additional delay.

While the applicable law on the trademark claims in this case will be federal, a number of the other claims brought by Mr. Whitney in this suit are Indiana state law claims.[4] Judges in the Central District of California are certainly competent to apply Indiana law, but "the familiarity of this court with applicable Indiana law is a factor to be taken into consideration that weighs at least slightly toward denial of transfer." Aearo Co., 2004 WL 1629566, at *3 (citing E & J Gallo Winery v. Morand Bros. Beverage Co., 247 F. Supp. 2d 973, 976 (N.D. Ill. 2002)). After considering all these factors, we find that the interest of justice, though largely neutral, redounds in favor of our retaining this case for final resolution.

### III.    Conclusion

We concede that this is a fairly close call. Clearly, it will be more inconvenient for Big Dog Sportswear to litigate here in Indiana than in California. However, a party requesting a transfer must satisfy a heavy burden in order to justify the move, and Big Dog Sportswear has not made such a convincing showing that a transfer would be *clearly* more convenient overall or that the transfer comports with the interests of justice. Thus, for the reasons detailed in this entry, we DENY Defendant's Motion to Transfer. IT IS

---

[4] In addition to federal and common law claims, the Amended Complaint alleges conversion under Ind. Code § 35-43-4-3, forgery under Ind. Code § 35-43-5-2(b), counterfeiting under Ind. Code § 35-43-5-2(a), and deception under Ind. Code § 35-43-5-3.

SO ORDERED.

Date: _11/07/2007_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:
James Dimos
LOCKE REYNOLDS LLP
jdimos@locke.com

Richelle Marie Harris
LOCKE REYNOLDS LLP
rharris@locke.com

Darlene R. Seymour
CONTINENTAL ENTERPRISES
dseymour@continental-enterprises.com

Joel E. Tragesser
LOCKE REYNOLDS LLP
jtragesser@locke.com